Argued and submitted February 19, affirmed December 8, 1993, reconsideration
denied February 2, petition for review denied February 22, 1994 (318 Or 381)

Mary Abou BAKR,
Personal Representative of
the Estate of Michael Alan Wood,
*Appellant,*

*v.*

Gordon W. ELLIOTT,
*Defendant,*

*and*

THE CITY OF EUGENE,
*Respondent.*

(16-91-03846; CA A74986)

864 P2d 1340

Les Swanson, Jr., argued the cause and filed the briefs for appellant.

Jens Schmidt argued the cause for respondent. With him on the brief was Harrang Long Watkinson Arnold & Laird, P.C.

Before Rossman, Presiding Judge, Richardson, Chief Judge,* and Leeson, Judge.

RICHARDSON, C. J.

Rossman, P. J., dissenting.

---

* Richardson, C. J., *vice* De Muniz, J.

## RICHARDSON, C. J.

On June 20, 1990, while driving on Jefferson Street in Eugene, plaintiff's decedent was fatally injured when a large tree limb broke and fell on his pickup truck. In 1981, the city had inspected the tree, observed that it was in "fair condition,"[1] and noted that it "needed work." However, the city's tree crew did not inspect or engage in any maintenance activity on the tree between 1981 and the time of the accident. Plaintiff brought this wrongful death action against the city,[2] alleging that it was negligent in the following respects:

"a. In failing to remove from the tree, or otherwise secure, the heavy branch that fell, even though that branch had veered from the body of the tree to a lower elevation several months before it broke off and fell.

"b. In failing to periodically, or at any time, prune the tree to prevent branches from breaking off and falling to the ground, even though other branches from that horse chestnut tree and from other trees in the immediate vicinity had previously broken off and fallen to the ground.

"c. In failing periodically, or at any time, to inspect the tree to determine whether large branches were overladen with foliage, had changed position, or otherwise constituted a hazard to vehicles and pedestrians in the vicinity.

"d. In failing to respond to requests to periodically, or at specific times, inspect this tree and other trees in the immediate vicinity[,] to prune and to determine the need for pruning to protect the public safety."

The city moved for summary judgment. It argued that it had no actual or constructive knowledge of the hazardous condition of the tree, that its lack of knowledge was due to its not having inspected the tree and that the decision not to inspect the tree was an exercise of policy judgment for which it is immune from liability under ORS 30.265(3)(c).[3]

---

[1] A tree's condition is rated as good, fair or poor.

[2] Plaintiff also brought a wrongful death action against Gordon Elliot, the owner of the property on which the tree is located. Elliot is not a party to this appeal.

[3] ORS 30.265 provides, in pertinent part:

"(3) Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

The trial court agreed with the city, granted its motion and entered judgment in its favor. Plaintiff appeals, and we affirm.

█     In *Sager v. City of Portland*, 68 Or App 808, 815, 684 P2d 600, *rev den* 298 Or 37 (1984), we held that the City of Portland was immune from liability for injuries allegedly arising from its failure to inspect and repair its sidewalks, because the development of its sidewalk maintenance program

> "involve[d] *a determination of priorities regarding alloca-tion of personnel, materials and funds*. Municipalities with fixed budgets must always struggle to allocate limited resources appropriately, and we are constrained against finding that the legislature intended to impose liability in such circumstances." (Emphasis supplied.)

*See also Ramsey v. City of Salem*, 76 Or App 29, 707 P2d 1295 (1985). Although a municipality is immune from liability in connection with the development of an inspection and main-tenance program, the immunity defense does not extend to claims based on negligence in the implementation of the program or the performance of particular maintenance activ-ities. *Tozer v. City of Eugene*, 115 Or App 464, 466, 838 P2d 1104 (1992).

█     Plaintiff contends that there was evidence to show that the city was negligent in failing to inspect and attend to the tree.[4] Her arguments fall into two categories. The first relates to alleged failures to undertake inspections and main-tenance of the tree as part of a system-wide program. Those arguments are defeated by the city's immunity defense. The record conclusively establishes that, due to its work load, understaffing and limited financial resources, the city, through its responsible officer, adopted a "crisis manage-ment" tree maintenance program. That program required

---

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

[4] She also argues that the city failed to respond to requests to perform work on the tree, but there was no evidence that any requests were received.

supervisors to prioritize work requests, with the goal being to respond to immediate hazards within 24 hours, to potential hazards within five days, and to all other requested work as time allowed. Although staff members inspected the trees that they worked on and would occasionally examine trees that they were able to inventory, there was no formal tree inspection program in place at the time of this accident. Here, as in *Sager*, the city's inspection and maintenance program was developed by policy-making officials in response to budgetary constraints. The city's failures to inspect and maintain this tree as part of an inspection and maintenance program are attributable to its discretionary decision not to have a program that, in its regular performance, would have resulted in particular attention to the tree.[5]

■      Plaintiff also argues that the city was or should have been aware of the dangerous condition of this tree specifically, and that it is not cloaked with immunity for its failure to act on that information. Plaintiff relies on the 1981 report and on various events that she suggests gave the city the opportunity to familiarize itself with the condition of the tree. Most charitably viewed, the 1981 report *arguably* could support the inference plaintiff would draw; the other evidence to which she points could not.

The difficulty with the argument is that, to the extent it demonstrates a question of fact about negligence, it demonstrates the absence of a factual question about immunity. The city's program was developed long after the 1981 report and, under the program, a tree in the condition that the 1981 report describes is not subject to regular inspection or maintenance.

This case differs from *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 843 P2d 415 (1992). The court held there that the administrative decision by school officials as to where to assign security personnel on school premises was discretionary, but the discretion did not extend to the failure to assign personnel to locations where the school authorities had "specific knowledge" that a fight would take place. The

---

[5] Plaintiff maintains that the city's policy decision was "bogus," and that ample resources were available to fund a more satisfactory inspection and maintenance program. The question for this court, however, is not whether the city's policy decision was right or wrong, but whether it made one.

apparent thrust of the court's reasoning in *Mosley* was that the school authorities had no discretion not to use the personnel to stop a fight that they knew was occurring or would occur.

Conversely, the policy decision here entailed a choice of what trees to inspect and maintain. This case might be analogous to *Mosley* if the evidence left open the question of whether this tree was one of the most dangerous ones in the city. However, the evidence established the opposite. The city was entitled to make a discretionary policy decision not to do anything about trees that its "specific knowledge" apprised it were in fair condition. Trees having only the deficiencies that the 1981 report identifies about this tree were excluded from further attention by the terms of the discretionary policy, while trees with more glaring deficiencies were to receive more urgent attention under it.

We hold that the evidence in the summary judgment record conclusively establishes that the city's conduct, if negligent, entailed the formulation and execution of a policy judgment, and that it was immune as a matter of law.

Affirmed.

**ROSSMAN, P. J.,** dissenting.

I agree with the majority that the trial court properly granted summary judgment for the city on plaintiff's fourth specification of negligence, which essentially faults the city for not adopting a periodic and routine tree inspection and maintenance program. The decision to employ a "crisis management" program was a classic policy decision for which the city enjoys immunity under ORS 30.265(3)(c). However, I do not agree that the court properly granted summary judgment on plaintiff's first three specifications on the ground of immunity. The availability of the immunity defense as to those claims hinges on whether the 1981 report gave the city particularized knowledge of the tree's hazardous condition which, if acted on in a timely manner, would have allowed the city to prevent the accident. Because resolution of that issue is factual and therefore should be left to a jury, I dissent.

The substance of plaintiff's first three specifications of negligence is that the city did not exercise due care in failing

to remove or secure the limb and in failing periodically, or at any time, to inspect or prune the tree from which the limb fell. Those claims can be interpreted in two ways: (1) The city should have periodically examined or trimmed the tree and, had it done so, it would have discovered and ameliorated the tree's dangerous condition; or (2) knowing that this particular tree needed attention, the city should have inspected or pruned the tree and, in so doing, it would have discovered that the tree was a potential hazard to passing motorists on Jefferson Street and would have taken appropriate remedial measures. The first interpretation is merely another way of attacking the city's policy choice to employ a "crisis management" program rather than a periodic inspection and maintenance program. Under that interpretation, the specifications would be inadequate for the reasons discussed in connection with plaintiff's fourth specification. The second interpretation, however,

> "alleges knowledge of a kind that would remove defendant from the scope of the immunity afforded by ORS 30.265(3)(c), *i.e.*, * * * *specific* knowledge concerning the incident involved in this case that, if acted on in a timely manner, would have enabled defendant to protect plaintiff." *Mosley v. Portland School Dist No. 1J*, 315 Or 85, 93, 843 P2d 415 (1993). (Emphasis in original.)

In *Mosley*, the Supreme Court addressed a situation in which the plaintiff's specification of negligence was capable of being read two ways. One possible reading, which resulted in a finding that the defendant was immune from liability under ORS 30.265(3)(c), was that the specification criticized a policy choice that the defendant had made regarding the allocation of its resources. The other possible reading, which resulted in a finding that the defendant's conduct was outside the scope of the immunity defense, was that the defendant had specific knowledge of the circumstances that placed the plaintiff in peril, yet failed to take appropriate steps to help ensure the plaintiff's safety. However, the court did not have to decide which reading to adopt, because the plaintiff did not produce any evidence that would have permitted a jury to find that the defendant had specific knowledge of the plaintiff's precarious situation. 315 Or at 93-94. Accordingly, the court did not reach the issue of "whether the availability of the immunity defense under ORS 30.265(3)(c) may at times

depend on factual questions that properly could be submitted to a jury." 315 Or at 94.

The issue of whether governmental immunity bars an action is ultimately a question of law for the court. *Jones-Clark v. Severe*, 118 Or App 270, 273, 846 P2d 1197 (1993). However, under certain circumstances, factual issues will arise in connection with the availability of the immunity defense and, when they do, I believe that those issues should be submitted to a jury for their proper resolution. Here, I would hold that there is a factual issue as to whether, under *Mosley*, the city may escape liability on the basis of discretionary immunity. The majority concludes otherwise, because "under the [city's] program, a tree in the condition that the 1981 report describes is not subject to regular inspection or maintenance." 125 Or App at 5. That the city's discretionary policy may not have dictated that the tree be routinely examined or pruned is immaterial in determining whether there is a factual question with regard to the city's claim of immunity. The critical inquiry here is not whether the city was derelict in performing its maintenance duties under the program, but whether the city had "*specific* knowledge concerning the incident involved in this case that, if acted on in a timely manner, would have enabled [it] to protect plaintiff['s decedent]." *Mosley v. Portland School Dist No. 1J, supra*, 315 Or at 93. (Emphasis in original.)

Had the plaintiff in *Mosley* provided evidence that demonstrated that the school district knew a fight was occurring or would occur and that it then failed timely to intervene, the school district could not have successfully asserted the immunity defense by arguing that its discretionary policy did not require action in those circumstances. The same is true here. If the 1981 report provided the city with specific knowlege of the tree's hazardous condition, then the city cannot claim immunity by arguing that its maintenance policy did not mandate that the tree receive attention.

I believe that reasonable minds could differ as to whether the 1981 report, which indicated that this particular tree "needed work," provided the city with sufficient information and awareness concerning the tree's dangerous condition that, if acted on in a timely fashion, *i.e*, sometime between 1981 and 1990, would have allowed the city to

prevent this accident. Under these circumstances, the availability of the immunity defense must depend on a jury's resolution of that issue of fact.

The city argues that, even if it is not immune from liability for performing discretionary acts, it is nevertheless entitled to summary judgment, because there is no evidence in the record that it was negligent in the performance of its maintenance duties. I disagree. Because this specific tree was reported in 1981 as "need[ing] work," the city's failure to take any action on the tree until after the accident in 1990 could be found to have created an unreasonable risk of harm to motorists using Jefferson Street. A trier of fact might reasonably conclude that the city should have known in 1981 that the tree was a danger to motorists and that, without attention, the tree's condition would worsen, making injury to a passing driver caused by a falling limb a foreseeable result of the city's prolonged period of inaction. Despite the facts that the city's tree crew worked in areas near this particular tree[1] and that injured crew members were frequently assigned to tree inspection duty, the tree was not pruned or inspected for a period of nearly nine years. Viewing the record in the light most favorable to plaintiff, I cannot say, as a matter of law, that there is no evidence that the city negligently carried out certain of its tree maintenance functions.

Because the majority has improperly decided this case, I dissent.

---

[1] The record discloses that, every two or three years, the city pruned trees at a senior center located across an alley from this particular tree.