Argued and submitted November 15, 1993, reversed and remanded August 10, 1994

David Robert HALL,
by and through his
guardian ad litem, Frances George,
and Barbara E. Hall,
*Appellants,*

*v.*

Susan Elizabeth DOTTER,
*Defendant,*

STATE OF OREGON
and Washington County, State of Oregon,
*Respondents.*

(C91-1353CV; CA A78471)
879 P2d 236

Victor Calzaretta argued the cause and filed the brief for appellant David Robert Hall.

Jeffrey S. Jones, argued the cause and filed the brief for appellant Barbara E. Hall.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

RIGGS, J.

Deits, P. J., concurring.

---

* Haselton, J., *vice* Durham, J.

### RIGGS, J.

Plaintiffs appeal the grant of summary judgment in favor of defendants State of Oregon and Washington County (the county). ORCP 47C. We reverse and remand.

This case arose out of a traffic accident that occurred on November 13, 1991, at the intersection of Tualatin Valley (TV) Highway and 178th Avenue in Washington County. Plaintiff Hall was standing in the median of the TV Highway as he attempted to cross it. He was struck and seriously injured by a car[1] that was turning left from 178th Avenue onto TV Highway.[2]

TV Highway is a state road and 178th Avenue is a county road. The state and the county have an agreement whereby the state is to provide all signs, signals and other traffic control devices at the intersection of state and county roads. In 1990, a visually impaired resident of the area had requested that the state install a pedestrian crosswalk or a traffic signal at this intersection. A state traffic engineer investigated the intersection pursuant to the Manual on Uniform Traffic Control Devices (Manual). The Manual was adopted by the Oregon Transportation Commission (OTC) pursuant to ORS 810.200(1)(a)[3] to specify uniform standards

---

[1] The car was being driven by defendant Dotter. Dotter has settled with all parties and is not a party to this appeal. The only remaining defendants are the State of Oregon and Washington County.

[2] Apparently, defendants misunderstood plaintiffs' allegations to suggest that Dotter was driving eastbound on the TV Highway and was attempting to turn north onto 178th Avenue when the accident occurred. Defendants' motion to dismiss says

"the facts are undisputed that plaintiff was struck on the TV Highway, and the allegations in the complaint indicate that Susan Dotter was attempting to turn from the TV Highway at its intersection with 178th."

However, plaintiffs alleged that Dotter

"had proceeded southbound on Southwest 178th Avenue and had turned and was proceeding eastbound on the TV Highway at the aforedescribed intersection."

Plaintiffs alleged that the accident occurred while Dotter was in the process of turning from, not onto, 178th.

[3] ORS 810.200(1)(a) provides:

"(1) The [Oregon Transportation] commission may exercise the following authority with respect to the marking, signing and use of traffic control devices in this state:

"(a) The commission shall adopt a manual and specifications of uniform standards for traffic control devices consistent with the provisions of the vehicle code for use upon highways in this state."

for traffic control devices. The Manual includes "warrants," or conditions, which, if present, indicate that a particular intersection requires traffic control devices.

The traffic investigator's report indicated that the intersection did not meet the warrants for traffic control devices. Even though the Manual did not require the installation of traffic control devices, a traffic engineer suggested that two pedestrian crossing signs should be installed on the TV Highway several hundred feet in either direction from the intersection. The state followed that suggestion and installed two pedestrian crossing signs on the TV Highway.

Plaintiffs brought this action, which alleges that defendants were negligent in designing and maintaining the intersection. Both defendants[4] moved for summary judgment. The state argued that the decision whether to provide crosswalks, signs or signals was controlled by the Manual, which was adopted by OTC as a discretionary policy decision, and therefore, the state is entitled to immunity under ORS 30.265(3)(c).[5] The county argued that it was not responsible for any of the negligence alleged by the plaintiffs. The trial court agreed with both defendants and granted their motion for summary judgment. Plaintiffs appeal, arguing that the state is not entitled to discretionary immunity and that the county may still be liable to plaintiffs, even though the accident occurred on the state highway and the county had contracted with the state to provide traffic control devices at this intersection.

To prevail on their motion for summary judgment, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a

---

[4] Washington County tendered defense of this action to the state on the basis of an agreement between the two entities in which the state agreed to "assume full responsibility" for all traffic control devices installed under the agreement.

[5] ORS 30.265 provides, in part:

"(3) Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

matter of law. ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978). Defendants have the burden of establishing the defense of discretionary immunity. *Stevenson v. State of Oregon*, 290 Or 3, 15, 619 P2d 247 (1980).

The state's argument that it is entitled to discretionary immunity is based solely on *Praggastis v. Clackamas County*, 305 Or 419, 752 P2d 302 (1988), in which the court recognized

> "the general principle that employees who are following the explicit orders of their superiors who have exercised discretionary authority in making such decisions will not be answerable for performing their duty." 305 Or at 429.

In *Praggastis*, a county presiding judge had standing instructions requiring clerks to record in the judgment docket book only those documents specifically identified as judgments. The plaintiff brought a tort claim against the county because a clerk did not docket a dissolution decree in the judgment docket book. The dissolution decree was not specifically identified as a judgment. The Supreme Court held that the clerk was entitled to immunity, because she was following the explicit orders of a judicially immune superior. The court noted that the clerk had "no discretion to disobey the judge's instruction" and that the clerk would have been subject to contempt if she had not followed the instructions. 305 Or at 430.

**3.** In this case, the state essentially argues that the traffic investigators had no discretion as to what traffic control devices should have been installed. The state argues that (1) the Manual embodied "explicit orders of [the investigators'] supervisors who have exercised discretionary authority" regarding the placement of traffic control devices; and (2) the traffic investigators simply followed the explicit orders and, thus, are entitled to immunity. However, defendants' affidavits in support of summary judgment demonstrate that the investigators' decision to install traffic control devices were not pursuant to the Manual; notwithstanding the absence of the Manual's warrants for traffic control devices,[6]

---

[6] According to the affidavit of a state traffic control engineer,

"this intersection met all requirements of the Manual on Uniform Traffic

pedestrian warning signs were installed at the suggestion of a traffic engineer.

Thus, even if the Manual constituted explicit orders, there is at least a disputed factual issue about whether the decision to install the signs was controlled by the Manual or any other "explicit orders." The trial court erred in granting summary judgment to the state under the principle stated in *Praggastis*.[7]

Plaintiffs also assign error to the court's conclusion that the county had no responsibility for the negligence alleged by plaintiffs. The court's ruling does not make clear whether the court found that the county had no responsibility because the accident occurred on the state highway, or because the state was contractually responsible for any negligence arising from the installation of the traffic control devices.[8] Regardless of the rationale, the court erred in granting summary judgment to the county.

The fact that the accident occurred on a state road does not, in and of itself, entitle the county to summary judgment. A landowner may be liable for harm to protected interests outside the land, caused by negligence on the land. *See Restatement (Second) of Torts* § 364 (1965). In other words, the county may be liable for harm that occurred on the state road, if the county's "conduct caused a foreseeable kind

---

Control Devices *prior to* the installation of the warning signs." (Emphasis supplied.)

Nevertheless, the state installed the warning signs, suggesting that the Manual was only a guide, not the type of explicit order that entitles an employee to immunity under the theory in *Praggastis.*

[7] We do not hold that defendants may not be protected by discretionary immunity, only that defendants have not established that they are entitled to immunity under the principle stated in *Praggastis*, which is the only theory of immunity that they advance here.

[8] In ruling on defendant's motion for summary judgment, the court said:

"It seems to me that what we're aiming at is the state highway situation and not something that may or may not have happened on the county road. That was really the purpose of my remarks as to the county. So this happened on the highway and wasn't a matter of just entering the highway, but entering the highway, traveling over two or three lanes, then making a turn and then hitting. So it seems to me this is a state matter. The state has undertaken virtually everything here except maybe some street naming signs, and even that to some degree. So that intersection is the responsibility of the state."

of harm to an interest protected against that kind of negligent invasion." *Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987). Plaintiffs alleged that the county was negligent "in failing to provide pedestrian warning signs," and that that conduct caused a foreseeable kind of harm, *i.e.*, plaintiff's injury. The county cannot escape liability based on the fact that the harm did not occur on its land.

**7, 8.** Likewise, it does not matter that the county had contracted away its responsibility for providing signs or signals to the state:

> "A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, * * * is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure." *Restatement (Second) of Torts, supra*, § 422.

The Oregon Supreme Court has applied this rule in finding that a storekeeper remains vicariously liable for the negligence of a contractor. *Lipman Wolfe v. Teeples & Thatcher*, 268 Or 578, 585, 522 P2d 467 (1974). The principle of section 422 is equally applicable here. If the county would otherwise be liable for negligence in maintaining its road, then the county remains liable for the negligence of its contractor. The fact that the contractor is the state is irrelevant to this principle.

Reversed and remanded.

**DEITS, P. J.,** concurring.

I agree with the majority opinion that there was evidence in the summary judgment record that some of the engineering decisions concerning warning signs were not dictated by the Department of Transportation Manual. For that reason only, I agree that it was error to allow the state's motion for summary judgment. I write separately to emphasize that, were it not for the factual questions about whether the Manual applied here and whether it was followed, the state would be entitled to prevail on its discretionary immunity defense.

Although plaintiff argues otherwise, ODOT's promulgation of the Manual was clearly a discretionary policy

decision, which is immune under ORS 30.265(3)(c). *See, e.g., Stevenson v. State of Oregon*, 290 Or 3, 619 P2d 247 (1980). The state would also be immune for the acts of its employees in implementing the policy decision embodied in the Manual, if they carried out the Manual according to its terms and, in doing so, committed no *independently* negligent act and exercised no independent judgment that would not itself qualify as discretionary. *See, e.g., Egner v. City of Portland*, 103 Or App 623, 798 P2d 721 (1990); *see also Bakr v. Elliott*, 125 Or App 1, 864 P2d 1340 (1993), *rev den* 318 Or 381 (1994).

*Praggastis v. Clackamas County*, 305 Or 419, 752 P2d 302 (1988), on which the state relies, supports the proposition stated in the preceding paragraph. I agree with the suggestion in the majority opinion that *Praggastis*, blending as it does the concepts of judicial immunity and discretionary immunity under the statute, is not the best authority for the proposition. The "explicit orders" language in *Praggastis* does not capture the rationale for immunizing the conduct of employees who simply carry out policy decisions that are themselves discretionary and immune: If the immunity did not "pass through" to those who put the discretionary decisions or programs into effect, the government's immunity for the discretionary actions themselves would effectively be lost as soon as they took effect and would be wholly illusory.

As noted at the outset, the only problem with the state's defense so far is that there is a question of fact that precludes summary judgment.[1] Were it not for that, defendants would be entitled to immunity under the general principles of discretionary immunity that *Praggastis* and other cases continue to uphold.

---

[1] I note that any engineering decisions that were not covered by the Manual's provisions *may* themselves be immune, *Stevenson v. State of Oregon, supra*, 290 Or at 15. That is another question that may turn on the facts developed at trial, but we cannot answer it as a matter of law on the basis of the record before us. *See Miller v. Grants Pass Irrigation*, 297 Or 312, 686 P2d 324 (1984).