Argued and submitted January 26, reversed and remanded August 1, 2007

Lisa Ann JOHN,
guardian ad litem for Michael Schlarp,
a Minor Child,
*Plaintiff-Appellant,*

*v.*

CITY OF GRESHAM
and Multnomah County,
*Defendants-Respondents,*

*and*

Shirley Jean GEPNER,
Department of Transportation, Tri-Met,
Portland General Electric Company, and Metro,
*Defendants.*

Multnomah County Circuit Court
030809120; A128278

165 P3d 1177

Todd S. Baran argued the cause and filed the briefs for appellant.

Stan LeGore argued the cause for respondent City of Gresham. With him on the brief was Miller & Wagner LLP.

Susan M. Dunaway, Assistant County Attorney, argued the cause for respondent Multnomah County. With her on the brief was Anges Sowle, County Attorney.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

This is a personal injury case in which a pedestrian, plaintiff's son, was struck by a car when crossing a street in a painted crosswalk that was part of a traffic improvement project constructed by defendants, the City of Gresham and Multnomah County. Plaintiff's theory is that both the city and the county were negligent in designing the intersection to include a mere painted crosswalk, which gave pedestrians like her son a false sense of security in an intersection that required greater protection. The trial court dismissed the claims against both defendants on their motions for summary judgment. The court concluded that both defendants are protected by discretionary immunity as a matter of law and that, in addition, the city is not liable because it does not own the road on which plaintiff's son was injured. We conclude that the trial court erred because, on the record before us, we cannot determine that either defendant is subject to discretionary immunity as a matter of law and because the mere fact that the city does not own the road does not mean that it cannot be liable for injuries that occur there. We therefore reverse and remand.

## I. FACTS

The relevant facts are not in dispute. The intersection at issue in this case is located at Southeast 187th Avenue and Stark Street in Gresham. The city owns Southeast 187th Avenue, while the county owns Stark Street. The intersection originally was not signaled and did not include a painted crosswalk.

In 1996, the county developed a Master Pedestrian Plan under the supervision of Karen Schilling, the county's Bike and Pedestrian Coordinator. Among other things, that plan adopted standards set forth in a statewide policy, the Manual of Uniform Traffic Control Devices (MUTCD), and stated a preference for marking crosswalks at intersections.

That same year, the city and the Oregon Department of Transportation (ODOT) entered into an agreement to jointly fund a pedestrian improvement project, known as the Ped-to-MAX project, to improve access to the MAX light rail station at Stark Street in the area of Southeast 187th and

188th Avenues. The project required the county's involvement, because it owns Stark Street.

The Gresham City Council delegated to two individuals the authority to make all project design and construction decisions on behalf of the city: Rebecca Ocken, the city's transportation planner, had responsibility for overseeing the development of a conceptual design for the project, while Jay McCoy, the city's transportation engineer, had responsibility for the final design and engineering and oversight of the construction.

To assist in the development of the conceptual design, Ocken organized and coordinated a task force, the Technical Advisory Committee (TAC), which included representatives from each of the affected governmental entities. Among those representatives was Schilling, from the county.

The city hired a private design firm to draft preliminary conceptual plans for the Ped-to-MAX project. Upon completion, the preliminary conceptual plans were distributed to members of the TAC. Schilling and other county employees reviewed those plans and observed that they did not include a painted crosswalk at the intersection of Southeast 187th Avenue and Stark Street. Schilling recommended that the intersection include a painted crosswalk, based on her understanding that marked crosswalks were preferred under the county's Master Pedestrian Plan. A technician working in the county's traffic engineering department disagreed and sent a note to Schilling that included the following comment: "Don't agree with crosswalk at 187th. There is no center refuge for protection. Will give peds a false sense of security, especially on a major arterial. * * * Could affect traffic flow—would expect to see an increase in ped. accidents & rearend accidents." Schilling, however, did not alter her recommendation.

The conceptual plans were eventually approved, and responsibility for the project shifted from Ocken to McCoy, the city's transportation engineer. McCoy considered various design possibilities for the intersection at Southeast 187th Avenue and Stark Street, including the addition of a signal light or a median island. But he determined that the traffic count at the intersection was not sufficient to meet MUTCD

requirements for a signal and that the addition of a median island would create unacceptable conflicts with traffic and mass transit and would be beyond the city's budget. As for painting a crosswalk at the intersection, he deferred to the county. He did not independently evaluate the county's recommendation in that regard because the county owned Stark Street itself, and the city did not. He did conclude that, in addition to painting the crosswalk, the best design for pedestrian safety at the intersection was to expand the width of the sidewalks along Stark Street (thereby decreasing the width of the street), remove on-street parking, add a bicycle lane to accommodate bicycle traffic, and install warning signals to alert motorists to a pedestrian crossing at the corner of Southeast 187th Avenue and Stark Street. McCoy considered, but rejected, the risk that the painting of stripes on the crosswalk could create a false sense of security for pedestrians attempting to cross Stark Street.

With McCoy's approval of the final plan, as modified, the matter proceeded to the county for its final approval. The county commission previously had delegated to the county engineer the authority to make all road project design decisions. The county engineer, in turn, has developed a policy that requires review by the traffic engineer of all road engineering projects in the county. Pursuant to that policy, when a design for other than a county project is reviewed, the traffic engineer verifies that the design has been approved by an engineer. The county traffic engineer does not conduct an independent investigation regarding the safety aspects of the design. However, the traffic engineer is required to review the design for any traffic engineering flaws and to ensure that the design complies with MUTCD standards.

William Henley was county engineer when the Ped-to-MAX plan was sent to the county for review. Carl Baughman was the county's traffic engineer. Henley delegated to Baughman responsibility for reviewing the Ped-to-MAX plan, and Baughman determined that the final design, including the marking of the crosswalk, was within the engineering design standards set by the county and the MUTCD. Baughman had final decision-making authority to approve the design submitted by the city, and he did so.

In January 1999, a county road crew painted the crosswalk at Southeast 187th Avenue and Stark Street.

On January 12, 2002, plaintiff's son crossed the street at the intersection of Southeast 187th Avenue and Stark Street. He saw a car approach the intersection, but he assumed that, because he was walking in a painted crosswalk, the approaching car would stop. It did not and struck him, causing extensive injuries.

Plaintiff initiated this action on behalf of her son against the driver of the car, the city, and the county. Her claims against the city and the county are that both were negligent in designing the intersection to include a painted crosswalk, which had the effect of lulling pedestrians such as her son into a false sense of security. The city and the county answered and, among other things, asserted a defense of discretionary immunity. The city also answered that, because it did not own the road where the accident occurred, it could not be held liable as a matter of law.

The city and the county moved for summary judgment on discretionary immunity grounds. They also argued that neither of them may be held liable as a matter of law because the placement of the crosswalk did not cause plaintiff's son's injuries. The city further asserted that it may not be held liable as a matter of law because it does not own the road where the accident occurred. The trial court concluded that both the city and the county are subject to discretionary immunity and granted the motions for summary judgment on that basis.

Plaintiff appeals, arguing that the trial court erred in granting the motions for summary judgment. She argues that the record on summary judgment shows that there is evidence from which it may reasonably be found that the painting of the crosswalk at the intersection of Southeast 187th Avenue and Stark Street was not the sort of decision that is protected by discretionary immunity.

In response, the city and the county continue to assert that the trial court correctly granted the motions for summary judgment because the design of the improvements

at the intersection involved the making of discretionary policy decisions that afford them discretionary immunity. Additionally, although not the basis for the trial court's ruling, the city and the county contend that the trial court's ruling should be affirmed on the alternative ground raised in their motions for summary judgment that, as a matter of law, the placement of the crosswalk did not cause plaintiff's son's injuries. The city further continues to assert that it cannot be liable as a matter of law, because it does not own Stark Street and had no responsibility for painting the crosswalk.

## II. ANALYSIS

A. *Discretionary immunity*

1. *Applicable law*

We begin with the court's decision with respect to the defense of discretionary immunity. In reviewing the trial court's decision, we view the facts and all reasonable inferences in the light most favorable to plaintiff, the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, ORCP 47 C, that is, if "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*; *see also Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001).

The Oregon Tort Claims Act provides that a public body is generally subject to suit for its torts and those of its officers, employees, and agents acting within the scope of their employment. ORS 30.265(1). The act, however, provides for immunity from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." ORS 30.265(3)(c).

Discretionary immunity under ORS 30.265(3)(c) is an affirmative defense, *see Moody v. Lane County*, 36 Or App 231, 584 P2d 335 (1978), and it is the governmental defendant's burden to establish it. *Vokoun v. City of Lake Oswego*, 335 Or 19, 31, 56 P3d 396 (2002); *Stevenson v. State of*

*Oregon*, 290 Or 3, 15, 619 P2d 247 (1980). Summary judgment based on discretionary immunity is appropriate only if the defendant establishes all of the elements of the defense as a matter of law. *Sande v. City of Portland*, 185 Or App 262, 267, 59 P3d 595 (2002).

■        Discretionary immunity protects governmental defendants from liability for the types of decisions that involve the making of policy, as opposed to the implementation of policy or routine determinations made in the course of day-to-day activities. *Garrison v. Deschutes County*, 334 Or 264, 273, 48 P3d 807 (2002); *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 89, 843 P2d 415 (1992); *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990). Discretionary policy decisions are those that involve a balancing of competing policy considerations in determining the public interest. *McBride v. Magnuson*, 282 Or 433, 437, 578 P2d 1259 (1978) ("[I]nsofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment.").

         Before determining whether a decision or action embodies such a choice that is subject to discretionary immunity, we must first ascertain the nature of the decision or action involved. In this case, the city and the county both describe their decisions in broad terms—as part of the larger determination to approve the Ped-to-MAX design. Plaintiff, on the other hand, insists that the decision at issue is much narrower—it is the decision to paint the crosswalk.

■        Case law makes clear that, although the overall design of a government project may entail the type of decisions that implicate discretionary immunity, that does not mean that every aspect of the project is subject to that defense. As we explained in *McComb v. Tamlyn*, 173 Or App 6, 12, 20 P3d 237 (2001), "a decision to build a highway rather than a railroad in a particular location is a governmental policy that cannot give rise to liability under the statute. On the other hand, many decisions in the planning and design of

highways require the exercise of some technical discretion but do not necessarily involve governmental policy choices."

Thus, for example, in *Vokoun*, the plaintiff sued the city for negligent maintenance and repair of a storm drain. The city contended that its decision whether and how to inspect and repair storm drains was part of a larger budgetary policy decision, and we agreed. The Supreme Court reversed, noting that the plaintiff's complaint targeted the manner in which maintenance employees decided to repair the erosion that they had discovered. That decision, the court decided, was the one at issue and was a routine decision that did not qualify for discretionary immunity. 335 Or at 32-34.

And, for another example closer to the facts at hand, in *McComb*, the plaintiff sued the state for negligence in designing signals for an intersection. The state argued that it designed the intersection in accordance with the MUTCD and that the decision to adopt the MUTCD was a policy decision subject to discretionary immunity. The trial court agreed and granted summary judgment in favor of the state. We reversed, noting that, even if the larger decision to adopt the MUTCD was a policy decision, the construction of the particular intersection, and the question whether it actually conformed to the MUTCD, was not a policy decision subject to immunity. 173 Or App at 12-13.

In this case, the decision that plaintiff challenges is the city's and the county's decision to paint the crosswalk at the intersection of Southeast 187th Avenue and Stark Street. Plaintiff does not challenge the broader design decisions of which that decision was a part. We therefore turn to the question whether the decision to paint the crosswalk is the sort of discretionary decision that is subject to immunity under the Oregon Tort Claims Act.

### 2. *Application of the law: The City*

We begin with the city's decision. The city contends that McCoy exercised discretion in determining whether to paint the crosswalk. The city relies on evidence that McCoy evaluated the overall safety design of the intersection, including whether to install a traffic signal or a median island and whether to expand the width of the sidewalks,

remove on-street parking, and install warning signals. That evidence is evidence from which a jury could find that the city's decision to paint the crosswalk involved the exercise of judgment involving public policy by a person to whom such decisions were delegated by the city council.

■      Plaintiff, however, relies on evidence that McCoy did not exercise any judgment at all about the painting of the crosswalk. According to that evidence, McCoy admitted that he did not make an independent decision about whether the crosswalk should be painted but, instead, merely deferred to the county's recommendation because Stark Street was, in his view, the county's road. That evidence is evidence from which a jury could find that the city's decision was, in actuality, not a decision at all. As the Supreme Court explained in *Mosely v. Portland School Dist. No 1J*, 315 Or at 92, discretionary immunity does not apply to decisions not to decide. *See also Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931, *rev den*, 335 Or 114 (2002) (for discretionary immunity to apply, a decision "must be the result of a *choice*, that is, the exercise of judgment" (emphasis in original)).

It is thus clear that there remains a genuine issue of material fact as to the nature of McCoy's decision—or non-decision—pertaining to the painting of the crosswalk. It necessarily follows that the trial court erred in granting the city's motion for summary judgment on discretionary immunity grounds.

3.    *Application of the law: The County*

■      We turn to the county's decision with respect to the painting of the crosswalk. The county contends that the evidence shows that the County Commission delegated the authority to approve the Ped-to-MAX project to Baughman, its traffic engineer, and that Baughman made the decision to paint the crosswalk as part of his approval of the overall final design. That decision, the county contends, entitles it to discretionary immunity.

Plaintiff contends that, although the evidence may show that Baughman exercised authority to approve the Ped-to-MAX project as a whole, the evidence also shows that his

decision with respect to the component of that larger project that pertains to the painting of the crosswalk was limited to determining whether it complied with the MUTCD. A decision that merely determines compliance with existing policies, plaintiff contends, is not entitled to discretionary immunity.

Once again, it is clear that the evidence reveals a genuine issue of material fact about the nature of the relevant decision. As plaintiff correctly notes, the summary judgment record includes evidence from which a jury could find that Baughman's decision concerning the painting of the crosswalk consisted of determining whether it complied with the MUTCD. That decision could not involve the exercise of judgment about matters of public policy; either the painting of the crosswalk complies with the MUTCD or it does not.

The county insists that, because the MUTCD itself was adopted by the County Commission as a matter of policy, Baughman's determination that painting the crosswalk conformed with the requirements of the MUTCD is therefore also a policy decision. The county cites as authority for that contention Justice Tanzer's concurring opinion in *Stevenson*. The problem with the argument is that it is based on a concurring opinion that was not joined by the other justices in *Stevenson*. Moreover, it is inconsistent with decisions that have been rendered since *Stevenson*. *See, e.g.*, *McComb*, 173 Or App at 13-14 (determination whether the construction of an intersection signal complies with MUTCD is not subject to discretionary immunity).

We conclude that the trial court erred in granting the county's motion for summary judgment on discretionary immunity grounds.

B. *Alternative ground for affirmance: Causation*

Both the city and the county argue that, even if the trial court erred in granting their motions for summary judgment on discretionary immunity grounds, we should affirm the dismissal of plaintiff's claims on the ground that, as a matter of law, there is no evidence that the painting of the crosswalk caused plaintiff's son to be injured. According to both defendants, there is a complete absence of evidence that

either of them could have done anything to prevent the accident. Plaintiff responds that genuine issues of material fact as to causation exist because she submitted an affidavit pursuant to ORCP 47 E that she has retained an expert who will testify that the painted crosswalk created an unreasonably dangerous condition, because there is evidence in the record that defendants' own employees recognized that painting the crosswalk created a risk of harm by creating a false sense of security, and because there is evidence that plaintiff's son would not have crossed at the intersection of Southeast 187th Avenue and Stark Street if the crosswalk had not been painted.

We conclude that there remain genuine issues of material fact as to causation and reject defendants' contention to the contrary without further discussion.

C. *Alternative ground for affirmance as to the city: Ownership of Stark Street*

■    The city argues that, if for no other reason, we should affirm the dismissal of plaintiff's claims against it because the accident occurred on Stark Street, which it does not own. Plaintiff responds that, as this court held in *Hall v. Dotter*, 129 Or App 486, 490, 879 P2d 236 (1994), the fact that an individual does not own land on which an injury occurs does not necessarily mean that the individual is free from liability for the injury.

Plaintiff is correct. In *Hall*, the plaintiff sued both the state and Washington County for personal injuries that occurred as a result of a traffic accident on the Tualatin Valley Highway, a state road. The plaintiff contended that both defendants were liable because of a negligent failure to provide pedestrian warning signs. The county obtained summary judgment on the ground that it could not be liable as a matter of law because it did not own the road. We reversed, explaining:

"The fact that the accident occurred on a state road does not, in and of itself, entitle the county to summary judgment. A landowner may be liable for harm to protected interests outside the land, caused by negligence on the land. *See Restatement (Second) of Torts* § 364 (1965). In other words, the county may be liable for harm that

occurred on the state road, if the county's 'conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion.' *Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987). Plaintiffs alleged that the county was negligent 'in failing to provide pedestrian warning signs,' and that that conduct caused a foreseeable kind of harm, *i.e.*, plaintiff's injury. The county cannot escape liability based on the fact that the harm did not occur on its land."

129 Or App at 492.

This case is not meaningfully distinguishable from *Hall*. It is undisputed that the city did not own Stark Street, the location of the injury. There is, however, evidence that, notwithstanding the fact that the city did not own the street, it had primary responsibility for the design of the improvements at the intersection of Southeast 187th Avenue and Stark Street and that the city did not merely acquiesce in the county's recommendation to paint the crosswalk. Under the circumstances, as in *Hall*, the fact that the city does not own the street on which the accident occurred does not necessarily mean, as a matter of law, that it cannot be liable for the accident.

The parties advance other arguments, as well, which we reject without discussion. We conclude that the trial court erred in granting defendants' motions for summary judgment.

Reversed and remanded.