Argued and submitted March 3, 2016; reversed and remanded for further proceedings with respect to specifications 13(a) and 13(b), otherwise affirmed March 29, 2017

Dylan ROBBINS,
*Plaintiff-Appellant,*

*v.*

CITY OF MEDFORD,
*Defendant-Respondent,*

*and*

MEDFORD URBAN RENEWAL AGENCY
and Katherine Warren,
*Defendants.*

Jackson County Circuit Court
126140L2; A158451

393 P3d 731

Dennis H. Black argued the cause for appellant. With him on the briefs was Black, Chapman, Webber & Stevens.

Dominic M. Campanella argued the cause for respondent. On the brief were Mark R. Weaver and Brophy Schmor LLP.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

Plaintiff was seriously injured when he was hit by a car while crossing South Riverside Avenue at its intersection with Ninth Street in Medford. There are no traffic signals controlling that intersection, but the City of Medford has installed a crosswalk across South Riverside Avenue on the south side of the intersection. Plaintiff was in that crosswalk when he was hit, and he alleges that the city was negligent by placing a crosswalk at that location and by omitting certain safety features from the crosswalk's design that, in plaintiff's view, would have averted his accident. On summary judgment, the trial court concluded that the discretionary immunity provision of the Oregon Tort Claims Act, ORS 30.265(6)(c),[1] bars plaintiff's negligence claims against the city and entered judgment for the city on those claims.[2] We conclude that the trial court's grant of summary judgment was correct with respect to plaintiff's challenge to the city's design decisions but that there are genuine issues of material fact as to the plaintiff's challenge to the city's decision to locate the crosswalk where it did. We therefore affirm in part and reverse in part.

## I.   ISSUE PRESENTED
## AND STANDARD OF REVIEW

We start by identifying what is—and is not—at issue in this appeal, as well as the legal standards that govern our review of the trial court's resolution of the issues presented.

First, what is at issue: In the complaint, plaintiff alleges that the city was negligent in five different ways. Two of the specifications of negligence, specifications 13(a) and 13(b), challenge the city's decision to place the crosswalk where it did. They allege that the city was negligent by:

---

[1] ORS 30.265(6)(c) provides that a "public body and its officers, employees and agents acting within the scope of their employment or duties *** are immune from liability for *** [a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

[2] Plaintiff also asserted claims against two other defendants, the driver of the car that hit him and the Medford Urban Renewal Agency. The claims against those defendants are not at issue in this appeal.

"(a)  Creating a marked, multi-lane crosswalk at the South Riverside Avenue area where [plaintiff's accident] occurred; [and]

"(b)  Failing to remove the marked crosswalk after having been advised to do so by engineering staff."

The remaining three specifications, specifications 13(c), 13(d), and 13(e), challenge the city's design of the crosswalk. They allege that the city was negligent by:

"(c)  Failing to place traffic control devices adequate to stop vehicles approaching the crosswalk before persons, such as plaintiff, stepped into the crosswalk to cross the street;

"(d)  Failing to place features into the vehicular approach to the crosswalk sufficient to protect plaintiff from being struck; and,

"(e)  Failing to respond with appropriate and well known safety repairs to the dangers of the crosswalk once they had become known."

The city's motion for summary judgment did not put at issue plaintiff's ability to prove those specifications of negligence. The only issue raised in the motion was whether discretionary immunity bars plaintiff from recovering on his claims against the city. Consequently, for purposes of this appeal, we assume that the city was negligent in each of the manners alleged. *Garrison v. Deschutes County*, 334 Or 264, 272, 48 P3d 807 (2002) (on review of grant of summary judgment to a county on the grounds of discretionary immunity, "we assume that the county, were it a private party, could have been found liable to plaintiffs for their injuries"). The sole question is the city's entitlement to discretionary immunity for those assumedly negligent acts and omissions. ORCP 47 C; *Eklof v. Steward*, 360 Or 717, 731, 385 P3d 1074 (2016) (the only issues properly before a court on summary judgment are those raised in the motion for summary judgment); *Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014) (same).

Second, our task on review: The trial court resolved the issue of the city's entitlement to discretionary immunity on summary judgment. On review of a grant of summary

judgment, we must view the summary judgment record in the light most favorable to the nonmoving party—in this case, plaintiff—and determine whether there are genuine issues of material fact and whether the city, as the moving party, is entitled to judgment as a matter of law on the ground of discretionary immunity. ORCP 47 C; *John v. City of Gresham*, 214 Or App 305, 311, 165 P3d 1177 (2007), *rev dismissed*, 344 Or 581 (2008).

Because discretionary immunity is an affirmative defense on which the city would have the burden of proof at trial, summary judgment is "appropriate only if [the city] establishes all of the elements of the defense as a matter of law." *John*, 214 Or App at 311-12; *see also Wieck v. Hostetter*, 274 Or App 457, 470, 362 P3d 254 (2015) (explaining what party who would bear the burden of proof at trial must show to be entitled to summary judgment). "[O]ur task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by defendant in support of [its] motion for summary judgment is such that all reasonable factfinders would have to find in defendant's favor on [its] affirmative defense of" discretionary immunity. *Wieck*, 274 Or App at 470. In other words, "we must be able to conclude that no reasonable factfinder could reject defendant's defense." *Id*. Because plaintiff's specifications of negligence challenge distinct alleged acts and omissions by the city, we consider the city's entitlement to discretionary immunity with respect to each act or omission alleged to be negligent. *See, e.g., Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 92-94, 843 P2d 415 (1992) (analyzing defendant's entitlement to discretionary immunity with respect to distinct allegations of negligence); *Stevenson v. State of Oregon*, 290 Or 3, 17-18, 619 P2d 247 (1980) (Tanzer, J., concurring) (explaining that when complaint alleges multiple acts of negligence, court should determine whether conduct is immune with respect to each alleged negligent act).[3]

---

[3] In their briefs to us, the parties have not undertaken to analyze the city's entitlement to discretionary immunity with respect to each distinct alleged specification of negligence. We do so because that is the approach the Supreme Court has taken in its case law and we understand that to be the required approach. *See Mosley*, 315 Or at 92-94 (ascertaining defendant's entitlement to discretionary immunity with respect to distinct specifications of negligence); *John*, 214 Or App at 312 (explaining that first step in assessing whether discretionary immunity

## II. ANALYSIS

ORS 30.365(6)(c) immunizes public bodies and their officers, agents and employees from civil liability for conduct that "is the result of a choice among competing policy considerations, made at the appropriate level of government." *Garrison*, 334 Or at 273. Under that provision, a governmental actor is entitled to discretionary immunity for allegedly negligent conduct only if three elements are met. *First*, the conduct must be the product of a decision. *John*, 214 Or App at 314 (discretionary immunity does not apply to nondecisions). *Second*, that decision must be a policy decision. *Turner v. Dept. of Transportation*, 359 Or 644, 652-53, 375 P3d 508 (2016). A policy decision is one that involves the "assessments of policy factors, such as the social, political, financial, or economic effects of implementing a particular plan or of taking no action." *Id.* at 653; *John*, 214 Or App at 312 ("Discretionary policy decisions are those that involve a balancing of competing policy considerations in determining the public interest."). Routine discretionary decisions made by governmental employees in the course of their day-to-day responsibilities are not policy decisions. *Id. Third*, the decision must have been made by a governmental decision-maker with the authority to make that type of policy decision. *Garrison*, 334 Or at 274. We turn to our examination of whether, with respect to each of plaintiff's specifications of negligence and each element of the discretionary immunity defense, the city has established its entitlement to discretionary immunity as a matter of law.

### A. Allegations with Respect to Crosswalk Location

Specification 13(a) alleges that the city was negligent in placing a marked crosswalk at the location where plaintiff was injured. As we explain, there are factual disputes regarding the decision-making process that led to the placement of the crosswalk at that site. Those factual disputes preclude summary judgment on the issue of discretionary immunity. *See John*, 214 Or App at 313-14 (conflicting evidence regarding the decision-making process that led

applies is to "ascertain the nature of the decision or action involved" in the light of the particular challenge made by the plaintiff).

to the painting of a crosswalk precluded grant of summary judgment to city on discretionary-immunity grounds on plaintiff's claim that city was negligent in placing crosswalk where it did).

On the one hand, the evidence tends to suggest that the city, through the proper governmental decision-maker, did, in fact, make a policy decision to locate a crosswalk at the intersection in question. According to that evidence, the city, by ordinance, has delegated the authority to make decisions about the location and design of crosswalks to its public works director. Cory Crebbin is the city's public works director and, in February 2009, he decided to paint the marked crosswalk at the location where plaintiff was injured. At the same time, he decided to remove a marked crosswalk that had been located on the north side of the intersection since 2003. Crebbin made those decisions after receiving a recommendation from the city's Traffic Coordinating Committee (TCC), which is charged with advising the public works director about matters of pedestrian and vehicular traffic. The TCC, which had received complaints about the existing crosswalk, recommended the removal of that crosswalk and the painting of a new crosswalk at the location where plaintiff was injured. It made that recommendation in the hopes of reducing conflicts between pedestrians and vehicles turning left onto South Riverside Avenue from Ninth Street. Crebbin reviewed the TCC's recommendation, and determined that it was consistent with the Manual for Uniform Traffic Control Devices (MUTCD) and also comported with his own engineering judgment. Based on that assessment, Crebbin chose to implement the TCC's recommendation by removing the existing crosswalk and repainting it on the opposite side of the intersection.

On the other hand, the evidence submitted by plaintiff in opposition to the city's motion suggests a different version of events. That evidence would permit a reasonable factfinder to find that the crosswalk's location was not the product of a policy decision, or, at a minimum, would permit a reasonable factfinder to reject the city's contention that it was the product of a policy decision. In particular, plaintiff submitted an affidavit from Anne McLoy, a television news reporter in Medford. In it, McLoy testified that a few months

after plaintiff's accident, she interviewed Crebbin about pedestrian accidents in Medford generally, and about plaintiff's accident in particular, for a story that she was doing on Medford pedestrian accidents. In response to McLoy's question as to why so many Medford crosswalks were faded, Crebbin told her that "research has shown that painting a crosswalk can actually increase the number of pedestrians hit by cars." Crebbin also told McLoy "that the crosswalk that [plaintiff] was struck in, the one on 9th and Riverside, is clearly marked, but [that] it is actually dangerous and, in fact, it really was never supposed to be there." Crebbin said that city engineers had "missed it in the City's renovation plans, but when they suggested removing it, it was determined to leave it and mark it better."

Crebbin's statements to McLoy, which would be admissible against the city at trial as admissions of a party opponent,[4] create a factual dispute as to whether the city, through its delegated decision-maker Crebbin, actually made a policy decision to locate a marked crosswalk at the location where plaintiff was injured. That evidence would permit a reasonable factfinder to find that the crosswalk's location was more a product of mistake or inadvertence than of the weighing of policy considerations required for discretionary immunity to apply. At the very least, McLoy's testimony would impeach Crebbin's testimony (assuming he testified consistently with his affidavit that was submitted in support of the city's motion for summary judgment), and allow a reasonable factfinder to have doubts about the nature of the city's decision-making process for locating the crosswalk and, based on those doubts, reject the city's discretionary-immunity defense. *See Washington v. Taseca Homes, Inc.*, 310 Or 783, 789-90, 802 P2d 70 (1990) (noting "that a party-

---

[4] Under OEC 801(4)(b)(D), Crebbin's statement to McLoy would be admissible against the city because it is "[a] statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See Andrews v. R.W. Hays Co.*, 166 Or App 494, 499-500, 998 P2d 774 (2000) (discussing when statements of an organization's employees are admissible as admissions of the organization in a case against the organization). It is undisputed that, by ordinance, Crebbin is the city employee with the delegated responsibility for the city's crosswalks. Thus, his statements about the crosswalk are ones "concerning a matter within the scope" of his employment.

opponent's statement may have dual probative value * * * both to prove what did not occur and to show defendant's prior inconsistent statement on that subject"). For those reasons, there is a genuine issue of material fact as to whether the city's decision to place a crosswalk at the location where plaintiff was injured is protected by discretionary immunity. As a result, the trial court erred in concluding that the city was entitled to summary judgment with respect to the first specification of negligence against the city.

We also conclude that the trial court erred in granting summary judgment to the city with respect to plaintiff's specification 13(b). That specification alleges that the city was negligent in failing to remove the crosswalk after city engineers advised the city to do so. As noted above, because the city did not challenge those allegations in its motion for summary judgment, we assume the truth of them—that is, that the city engineers in fact advised the city to remove the crosswalk in which defendant was hit but that the city did not do so. Nothing in the city's summary judgment evidence addresses those allegations; the only evidence in the record about the removal of a crosswalk is the evidence regarding the decision to remove the previous crosswalk on the other side of the intersection. Thus, the city simply has not made a case for discretionary immunity with respect to the second specification of negligence and, consequently, is not entitled to summary judgment on discretionary-immunity grounds as to that allegation.

## B. *Allegations with Respect to Crosswalk Design*

Plaintiff's third, fourth, and fifth specifications of negligence, specifications 13(c), 13(d), and 13(e), challenge the crosswalk's design.[5] Plaintiff alleges that the city was

---

[5] Plaintiff's fifth specification of negligence is ambiguous. It alleges that the city was negligent in "[f]ailing to respond with appropriate and well known safety repairs to the dangers of the crosswalk once they had become known." Although the reference to "repairs" could be construed to suggest that plaintiff was alleging that the city was negligent in its routine maintenance of the crosswalk, the parties appear to have treated this allegation as challenging the crosswalk's design and the city's failure to incorporate additional safety features into that design. For that reason, we construe the fifth allegation as a challenge to the crosswalk's design.

negligent in omitting certain safety features from its design. The city argues that it is entitled to summary judgment as to those specifications because the uncontroverted evidence in the summary judgment record establishes that the crosswalk's design—including the safety features that it does and does not have—is the product of a policy decision made by Crebbin in 2010, approximately one year after the crosswalk was installed at the location of plaintiff's accident.

We agree with the city. According to the city's uncontroverted evidence, a year after the installation of the crosswalk, Crebbin received a recommendation from the TCC that the city should install additional pedestrian safety measures at the crosswalk. The TCC recommended painting a "'STOP bar' on the pavement 20 feet south of the subject crosswalk and 'Stop Here for Pedestrian' signs on both sides of Riverside Avenue." The TCC advised against pedestrian actuated lights at the crosswalk because of concerns about effectiveness, expense, and the potential impact of such lights on the traffic flow on Riverside Avenue. After receiving that recommendation, Crebbin conducted his own assessment of what safety measures to install at the crosswalk, with the assistance of Alex Georgevitch, the city's transportation manager and engineer. In particular, Crebbin investigated whether to install pedestrian actuated lights in the crosswalk or to, instead, accept the TCC's recommendation to address safety issues with a painted stop bar and additional signs. Ultimately, Crebbin chose to accept the TCC's recommendation—which he had determined otherwise complied with the MUTCD—because of policy considerations: the cost of the lights, their likely effectiveness, and the process of obtaining approval from the state to install the lights. Thus, at the time of plaintiff's accident, the safety features in place at the crosswalk were the product of Crebbin's policy decision. Because it is undisputed that Crebbin had the delegated authority to make that decision, the city has established that it is entitled to discretionary immunity as a matter of law with respect to plaintiff's third and fourth specifications of negligence. *See Mann v. McCullough*, 174 Or App 599, 607, 26 P3d 856 (2001), *rev den*, 334 Or 631 (2002) (affirming a directed verdict on discretionary-immunity grounds on negligence

claim where undisputed evidence showed traffic control choices were the result of city's delegated policy decisions).

In arguing for a contrary conclusion, plaintiff points to his ORCP 47 E affidavit, which avers that plaintiff has an expert who will testify in such a way as to give rise to an issue of material fact. But, in this case, the city's claim to discretionary immunity is dependent on the historical facts—the city's theory of defense is that Crebbin, its delegated decision-maker, made a policy decision about what safety features the crosswalk should include. Whether or not Crebbin made the policy decision that the city claims he made is not a matter that is susceptible to proof by expert testimony. Under those circumstances, plaintiff's ORCP 47 E affidavit is insufficient to preclude summary judgment. As we have explained,

> "If the point or points put at issue by a * * * summary judgment motion could not conceivably be proven through expert testimony, but necessarily would require proof by testimony from witnesses with personal knowledge, then an ORCP 47 E affidavit will not, on its own, preclude summary judgment."

*See Hinchman v. UC Market, LLC*, 270 Or App 561, 572, 348 P3d 328 (2015).[6]

Consequently, the trial court correctly granted summary judgment to the city with respect to plaintiff's third, fourth, and fifth specifications of negligence.

---

[6] This does not mean that an ORCP 47 E affidavit will never suffice to preclude summary judgment on an issue of discretionary immunity. In some cases, it may. For example, if a governmental entity were to claim discretionary immunity in connection with a claim for negligent crosswalk design by contending that the design was the product of its policy decision to adopt the MUTCD, then an ORCP 47 E affidavit could suffice to create a factual dispute. That is because, in such a case, the governmental entity's claim for discretionary immunity would fail if the crosswalk's design did not, in fact, comport with the MUTCD, and the issue of the design's compliance with the MUTCD is one that is susceptible to proof by expert testimony. *See McComb v. Tamlyn*, 173 Or App 6, 14-15, 20 P3d 237 (2001) (conflicting expert testimony about whether intersection's design complied with MUTCD where state argued that adopting MUTCD was a policy choice precluded directed verdict for the state on discretionary immunity grounds). As always, whether an ORCP 47 E affidavit suffices to preclude summary judgment depends on the particular facts of the case, including the plaintiff's theory of the case, the defendant's theory of defense, and the particular issues raised by the motion for summary judgment.

## III.   CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the city with respect to the specifications of negligence alleged in paragraphs 13(c), 13(d), and 13(e) (the design allegations) of the complaint, but reverse with respect to the specifications of negligence alleged in paragraphs 13(a) and 13(b) (the location allegations) and remand for further proceedings with respect to those allegations.

Reversed and remanded for further proceedings with respect to specifications 13(a) and 13(b); otherwise affirmed.