Argued and submitted March 12, 2021, affirmed May 4, 2022

Jared VERARDO,
*Plaintiff-Appellant,*

*v.*

OREGON DEPARTMENT OF
TRANSPORTATION,
an agency of the State of Oregon,
*Defendant-Respondent.*

Lincoln County Circuit Court
19CV10903; A173167

510 P3d 983

Plaintiff brought this action against the Oregon Department of Transportation (ODOT), alleging that he suffered personal injuries as "a direct and proximate result of defendant's negligence in failing to properly maintain" a guardrail on Highway 20 outside of Lincoln City. He challenges the trial court's granting of ODOT's motion for summary judgment based on discretionary immunity. *Held*: The record on summary judgment required the conclusions that ODOT's maintenance of highway guardrails is controlled by policies developed by ODOT's chief engineer and that the guardrail at the location of plaintiff's accident complied with that policy. Thus, ODOT's actions were entitled to discretionary immunity from tort liability under ORS 30.265(6)(c) (providing immunity from liability for any claim against a public body "based upon *** the failure to exercise or perform a discretionary function or duty"), and the trial court did not err in granting ODOT's motion for summary judgment.

Affirmed.

Sheryl Bachart, Judge.

Lisa Benedetti argued the cause for appellant. Also on the briefs were William D. Brandt, Brad J. Moore, Washington, and Stritmatter Kessler Koehler Moore.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

## POWERS, J.

Plaintiff brought this action against the Oregon Department of Transportation (ODOT), alleging that he suffered personal injuries as "a direct and proximate result of defendant's negligence in failing to properly maintain" a guardrail on Highway 20 outside of Lincoln City. The trial court granted ODOT's motion for summary judgment based on discretionary immunity and an absence of evidence of negligence, and plaintiff appeals. We conclude that the trial court did not err and therefore affirm.

The record on summary judgment includes evidence that, while driving eastbound on US Highway 20, plaintiff fell asleep at the wheel. His car drifted across the westbound lane and travelled off of the pavement and off the westbound soft shoulder. In attempting to return to the road, plaintiff drove his car into the "terminal," or end piece, of a metal guardrail on the westbound shoulder. The guardrail at that location flared away from the road and was outside of the "clear zone" for oncoming traffic, meaning that it was beyond an area that was to be kept free of obstacles pursuant to ODOT's policy.[1] In travelling back toward the road, plaintiff's car struck the end piece of the guardrail approximately head-on, as shown on the police report diagram on page 444. The guardrail pierced the driver's side door, causing plaintiff severe injuries.

Plaintiff brought this action, seeking to recover damages for his injuries. Plaintiff's complaint alleged that ODOT breached its duty to keep the highway reasonably safe in failing to maintain the guardrail and in using an obsolete and unsafe guardrail system.[2] ODOT filed a motion

---

[1] Christopher Henson, ODOT's Senior Roadside Design Engineer, testified that the required clear zone is determined based on the anticipated speed at a location and the amount of traffic, and is "the area that we try to accommodate for the recovery of an errant vehicle that leaves the roadway."

[2] The only explicit specification of negligence was a failure to properly maintain the guardrail. In a separate paragraph of the complaint, however, plaintiff also alleged: "Defendant owed plaintiff a duty to maintain a safe highway and, in particular, had a duty to keep the highway reasonably safe, which it failed to do by using an obsolete and unsafe guardrail system[.]" Liberally construed, the complaint includes a specification of negligence in the installation of the guardrail.



for summary judgment, providing evidence, through a declaration of Christopher Henson, ODOT's Senior Roadside Design Engineer, that, when installed in 1988, the guardrail and its end piece were the best available. In their location, they complied and still comply with Oregon highway design standards. They also comply with ODOT's policies concerning the maintenance and upgrade of highway guardrails and end pieces, as developed by ODOT's chief engineer. Accordingly, ODOT argued, its actions are entitled to discretionary immunity from tort liability under ORS 30.265(6)(c),

which immunizes governmental entities from tort liability for "the performance of or the failure to exercise or perform a discretionary function or duty." ODOT further contended that plaintiff had failed to present any evidence giving rise to a question of fact as to the foreseeability of a risk of harm to plaintiff or causation.

In his response to the motion on summary judgment, plaintiff shifted away from the complaint's allegation of negligent maintenance and focused exclusively on negligence in the design and installation of the end piece, arguing, essentially, that it is inherently dangerous, no matter what its location. Plaintiff noted evidence in the record that the type of end piece that plaintiff hit, as installed at the particular location, was not intended to be hit head-on. Plaintiff noted that ODOT's highway design manual refers to that particular type of end piece as a "piercing hazard." Henson responded affirmatively when asked by plaintiff's counsel in deposition: "If there is a guardrail treatment that would pierce a car, would that be considered hazardous?" Plaintiff asserted that that evidence was sufficient to create a jury question as to negligence in the installation of the particular end piece.

Plaintiff asserted further that ODOT's decision to use the end piece was not a "top-level" policy decision to which discretionary immunity would apply, and that ODOT cannot be immune from liability for having created a hazardous situation.

ODOT replied that the record on summary judgment shows that, at their location, the guardrail and end piece complied with state highway design and clear-zone requirements. ODOT further noted that its policy regarding the maintenance of guardrails and their end pieces did not require the replacement of the end piece that plaintiff hit, because, at its location, the guardrail complied with design standards and clear-zone requirements. ODOT argued that the decision, made by ODOT's chief engineer, not to include complying guardrail end pieces among those to be replaced, was a policy decision made in an exercise of judgment and based partially on budgetary considerations, and was subject to discretionary immunity.

The trial court agreed with ODOT as to both discretionary immunity and negligence. The court granted ODOT's motion for summary judgment, concluding that ODOT's decision not to change the guardrail end piece was within ODOT's discretionary immunity. *See* ORS 30.265(6)(c) (providing immunity from liability for any claim "based upon * * * the failure to exercise or perform a discretionary function or duty"). In the alternative, the court determined that it did not find any evidence that ODOT was negligent in its installation of the guardrail's end piece. The court dismissed the complaint with prejudice.

On appeal, plaintiff contends that the trial court erred in determining that ODOT was entitled to discretionary immunity. Plaintiff also challenges the trial court's determination on the absence of evidence of negligence. In reviewing the trial court's ruling, we view the evidence in the record on summary judgment, and all reasonable inferences, in the light most favorable to plaintiff, the nonmoving party, to determine whether there are genuine issues of material fact that preclude summary judgment. ORCP 47 C. Under that standard, we conclude that the trial court did not err.

We begin and end with the trial court's ruling on discretionary immunity, challenged in plaintiff's first assignment of error. With certain exceptions, public bodies in Oregon are liable for the torts of their employees and agents. ORS 30.265(1). One such exception is discretionary immunity or "discretionary-function" immunity, as the Supreme Court described it in *Turner v. State of Oregon*, 359 Or 644, 652, 375 P3d 508 (2016). ORS 30.265(6) provides, in part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The modern rationale underlying the doctrine of discretionary immunity is the distribution of powers among

the three coordinate branches of government.[3] In *Stevenson v. State of Oregon*, 290 Or 3, 10, 619 P2d 247 (1980), the court explained that "[w]hen a governmental body by its officers and employees makes [a policy] decision, the courts should not, without clear authorization, decide whether the proper policy has been adopted or whether a given course of action will be effective in furthering that policy." *See also Westfall v. Dept. of Corrections*, 355 Or 144, 157-64, 324 P3d 440 (2014) (discretionary immunity applies when a governmental entity adopted a policy and then made a challenged decision in accordance with policy).

Importantly, not all discretionary decisions of governmental bodies constitute policy decisions entitled to discretionary immunity. The court has identified three criteria for the application of discretionary immunity: The decision must be the result of a choice involving the exercise of judgment; the decision must involve public policy as opposed to the routine day-to-day decision-making of public officials; and the decision must be exercised by a body or person that has the responsibility or authority to make it. *Turner*, 359 Or at 652 (explaining that conduct is the performance of a discretionary function or duty when "it is the result of a choice among competing policy considerations, made at the appropriate level of government"); *see also Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990) (observing that discretionary immunity does not extend to "routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action").

Discretionary immunity is an affirmative defense for which a defendant would bear the burden of proof at trial. *Robbins v. City of Medford*, 284 Or App 592, 596, 393 P3d 73 (2017). Thus, summary judgment is appropriate only if the

---

[3] The separation or distribution of powers principle is embodied in Article III, section 1, of the Oregon Constitution, which provides:

"The powers of the Government shall be divided into three [separate] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

defendant establishes all of the elements of the defense as a matter of law. *Id*.

We conclude that ODOT has met its burden to show that its decisions regarding the installation and maintenance of the guardrail and its end piece were policy judgments made by a person authorized to make policy and, therefore, that the trial court correctly determined that discretionary immunity applied to plaintiff's claim. The record on summary judgment includes the uncontradicted deposition testimony of Henson, ODOT's Senior Roadside Design Engineer, who explained that ODOT's chief engineer developed policy recommendations on highway design and maintenance for the agency's director. Henson explained that the chief engineer has developed Oregon's highway design guidelines and that those guidelines required that highways be designed with "clear zones," which are unencumbered roadside areas that are as wide as practical at specified highway sections. The "clear zones" provide a corridor on either side of the lane of travel that should be clear of obstacles or hazards. Where an object or hazard cannot be cleared, a roadside barrier is used to shield objects and hazards within the "clear zone." For vehicles travelling eastbound, the "clear zone" in the westbound direction is the distance from the center lane to an obstacle on the westbound shoulder. The "clear zone" is a planning and design decision in the construction of a particular roadway and placement of guardrails. The guardrail end piece that plaintiff hit was outside the "clear zone" for eastbound traffic at that location. Thus, the accident occurred outside of the area that ODOT's policy required it to leave "clear."

Henson further explained that, when installed, the guardrail and end piece met all recognized standards for highway design, and that at the time of the incident the guardrail and end piece met current standards based on its location outside the required "clear zone." Henson also explained that the end piece that plaintiff hit was not one that ODOT's policy required to be replaced. As Henson described, ODOT's chief engineer made the policy decision with respect to guardrail replacements: "the plan was to replace all below-230-compliant guardrail with 350-compliant guardrail using 1R Roadside Safety Program funding

according to defined priorities."[4] At the time of the incident, the guardrail at issue "was 350 compliant based on its location as the trailing end terminal [was] located outside the clear zone. It was not below 230 compliant."

Plaintiff contends that the record on summary judgment includes evidence that the decision to install or to replace or not replace the guardrail's end piece was a day-to-day decision made by an unknown employee. That argument, however, is not based on a permissible inference from the record on summary judgment. *See Deberry v. Summers*, 255 Or App 152, 167, 296 P3d 610 (2013) (explaining that, "[a]lthough the line between reasonable inference and impermissible speculation is not always easy to draw, in certain respects, the line is a bright one"). Henson's deposition testimony and declaration provided uncontroverted evidence that the guidelines for the placement and upgrade of guardrail end pieces were policy decisions made by ODOT's chief engineer through the exercise of judgment, and that the end piece that plaintiff hit complied with those policies. Accordingly, the evidence in the record on summary judgment requires the conclusion ODOT was entitled to discretionary immunity for those policy decisions.

Given our conclusion that ODOT's policy decisions relating to the placement and maintenance of the guardrail end piece that plaintiff hit were entitled to discretionary immunity, we need not address plaintiff's second assignment of error, in which he contends that the trial court erred in concluding that there was no evidence giving rise to a jury question as to whether ODOT was negligent.

Affirmed.

---

[4] The 230- and 350-compliance specifications related to the National Cooperative Highway Research Program or NCHRP reports on roadside hardware.