No. 559 June 25, 2025 407

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Sheri GAZITT,
as Personal Representative of
the Estate of Elijah Edward Coe,
*Plaintiff-Appellant,*

*v.*

CITY OF PORTLAND,
a public body,
*Defendant-Respondent,*
*and*

Eric M. WHITFIELD,
an individual,
*Defendant.*

Multnomah County Circuit Court
20CV08246; A179074

Shelley D. Russell, Judge.

Argued and submitted May 13, 2024.

Cody Hoesly argued the cause for appellant. Also on the opening brief were Larkins Vacura Kayser, LLP; and Scott F. Kocher and Forum Law Group LLC. On the reply brief were Cody Hoesly and Barg Singer Hoesly, PC; and Scott F. Kocher and Forum Law Group, LLC.

Denis Vannier argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

## ORTEGA, P. J.

Plaintiff brought this wrongful death suit as personal representative of the estate of Elijah Coe, who died from injuries sustained in a traffic collision at the intersection of East Burnside Street and 17th Avenue in Portland. She appeals a limited judgment dismissing her negligence claim against the City of Portland entered after the trial court granted summary judgment in favor of the city on the ground that the discretionary immunity provision of the Oregon Tort Claims Act, ORS 30.265(6)(c), bars plaintiff's claim.[1] We conclude that the city failed to establish the affirmative defense of discretionary immunity to plaintiff's negligence allegations as a matter of law and that the trial court therefore erred in granting summary judgment to the city on that basis. We reverse and remand.

On review of a grant of summary judgment, we must view the summary judgment record in the light most favorable to the nonmoving party—in this case, plaintiff—and determine whether there are genuine issues of material fact and whether the city, as the moving party, is entitled to judgment as a matter of law on its affirmative defense of discretionary immunity. ORCP 47 C; *Robbins v. City of Medford*, 284 Or App 592, 595-96, 393 P3d 731 (2017). We briefly set forth the background facts with that standard in mind and include additional facts in our analysis.

On the afternoon of May 3, 2019, signage on East Burnside Street expressly allowed vehicle parking along the south curb up to the intersection with 17th Avenue. Coe was riding his motorcycle eastbound on East Burnside Street. Whitfield was driving northbound on Southeast 17th Avenue and stopped at the stop sign where it intersects with East Burnside. Consistent with the parking signage, vehicles had parked along the south curb of Burnside, blocking the view that Coe and Whitfield had of each other. Whitfield attempted to turn left (westbound) onto East Burnside, crossing the eastbound lane as Coe approached in

---

[1] Plaintiff's claims against defendant Eric M. Whitfield have been stayed pending this appeal. The trial court also granted summary judgment in favor of the city on plaintiff's negligence *per se* claim, and plaintiff does not challenge that ruling on appeal.

the opposite direction. Coe swerved around Whitfield's car to avoid colliding with it. In doing so, Coe veered into the westbound lane and collided head-on with a car travelling westbound on Burnside. Coe died of injuries he sustained in the crash.

Plaintiff's operative complaint alleges that the city was negligent in six different ways, all of which concerned its knowing and intentional failure to design or maintain reasonably safe sight distances at the intersection:[2]

"(a)    In failing to provide required sight distances for people traveling eastbound on East Burnside approaching 17th Avenue, and for people traveling northbound on 17th Avenue at the intersection;

"(b)    In failing to design, maintain or remedy deficiencies at the intersection to ensure adequate sight distance for people using the intersection;

"(c)    In knowingly ignoring required sight distance standards;

"(d)    In the alternative or in combination with providing parking setbacks,[3] failing to adopt other mitigation measures such as posting lower speed limits in the sight distance-restricted areas, to make the required sight triangles smaller;

"(e)    In failing to make travel at the intersection of East Burnside Street and SE 17th Avenue reasonably safe for the public; and

"(f)    In failing to exercise reasonable care."

The city moved for summary judgment on several grounds, including, as relevant to this appeal, that "discretionary immunity insulates the [c]ity from liability" because it followed three specific Portland Bureau of Transportation (PBOT) policies "to maintain and regulate its infrastructure": (1) the city's 1980 and 2035 Comprehensive Plans, the proffered portions of which govern "parking management,"

---

[2] In the context of transportation engineering, "sight distance" refers to a road user's line of sight or visibility to react to potential hazards and make safe decisions.

[3] A parking setback in this context is the distance between a parking zone and the crosswalk within a street's "curb zone," or area between the curb and the travel lanes.

(2) PedPDX, which "called for parking removal at the vehicular approach to an uncontrolled intersection" to increase visibility and would be implemented at the southwest corner of the intersection during the next capital improvement or paving project; and (3) the city's complaint-based or report-driven system "for gaining knowledge of and addressing defects in its infrastructure, such as road signage and visibility problems at intersections."

Plaintiff responded that "questions of fact, as well as legal insufficiencies doom [the city's] reliance on each of its three cited policies" for asserting discretionary immunity to her negligence claim, in which she alleges that the city "was negligent in its maintenance of the intersection at issue here, particularly with regard to the lack of a parking setback or other conditions that would reduce or obviate the need for a setback."

The trial court granted the city's summary judgment motion as to its discretionary immunity affirmative defense. The court reasoned that the city "set out three distinct policies by which it conducts street evaluation, maintenance and improvements," "provided supporting declarations from top level personnel as to how those policies were carried out with respect to the intersection at issue," and "offered evidence that it in fact followed those policies with respect to the intersection in question." This appeal followed.

Public bodies in Oregon are civilly liable for the torts of their officers, employees, and agents acting within the scope of their employment or duties, with certain exceptions. ORS 30.265(1). ORS 30.265(6)(c) provides immunity for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Under that provision, "governmental conduct amounts to the performance of a 'discretionary function or duty' if it 'is the result of a choice among competing policy considerations, made at the appropriate level of government.'" *Turner v. Dept. of Transportation*, 359 Or 644, 652, 375 P3d 508 (2016) (quoting *Garrison v. Deschutes County*, 334 Or 264, 273, 48 P3d 807 (2002)).

There are three criteria for discretionary immunity to apply to a claim:

> "The decision must be the result of a choice involving the exercise of judgment; the decision must involve public policy as opposed to the routine day-to-day decision-making of public officials; and the decision must be exercised by a body or person that has the responsibility or authority to make it."

*Verardo v. Dept. of Transportation*, 319 Or App 442, 447, 510 P3d 983 (2022).

When a public body asserts that it is entitled to discretionary immunity, "we assume that [it] was negligent in each of the manners alleged" by the plaintiff. *Robbins*, 284 Or App at 595; *Garrison*, 334 Or at 272 (on review of a grant of summary judgment on grounds of discretionary immunity, "we assume that [the defendant], were it a private party, could have been found liable to plaintiffs for their injuries"). And because discretionary immunity is an affirmative defense on which the city would have the burden of proof at trial, summary judgment is "appropriate only if the defendant establishes all of the elements of the defense as a matter of law." *John v. City of Gresham*, 214 Or App 305, 311-12, 165 P3d 1177 (2007), *rev dismissed*, 344 Or 581 (2008); *Robbins*, 284 Or App at 596 ("Our task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by defendant in support of its motion for summary judgment is such that all reasonable factfinders would have to find in defendant's favor on its affirmative defense of discretionary immunity." (Internal quotation marks, citation, and brackets omitted.)).

"Before determining whether a decision or action embodies such a choice that is subject to discretionary immunity, we must first ascertain the nature of the decision or action involved." *John*, 214 Or App at 312. Then, we must "analyze the city's entitlement to discretionary immunity [for the identified decision or action] with respect to each distinct alleged specification of negligence." *Robbins*, 284 Or App at 596 n 3 (explaining that to be the required approach under Supreme Court case law).

Here, in its summary judgment motion, the city proffered three policies and identified three distinct decisions to which it asserted immunity for plaintiff's allegations: (1) the Comprehensive Plans, under which it decided to allow parking at the intersection up to the crosswalk; (2) PedPDX, under which it decided to remove parking to increase visibility at the intersection with the next planned capital improvement or paving project; and (3) the complaint-based or report-driven policy, through which it decided to "gain[] knowledge of and address[] defects in its infrastructure, such as road signage and problems with visibility at intersections." The city's reply in support of its summary judgment motion succinctly identified the three aspects of its challenged decision-making that it asserts were shielded by discretionary immunity:

> "Should Plaintiff's case be interpreted as challenging the City's approach to parking policies, the comprehensive plans provide discretionary immunity. Second, the City has a policy as to when and how it investigates traffic issues. To the extent Plaintiff's case is interpreted as challenging the adequacy of the City's investigations or the failure to remedy a known hazard, the complaint-based system provides immunity. These investigations do consider parking demand as a factor, which is consistent with the comprehensive plans' focus on economic vitality. And lastly, the City has a policy for how to conduct parking removal. To the extent Plaintiff's case is interpreted as a failure to proactively provide parking removal, the policy of PedPDX provides immunity."

We proceed to analyze whether the city is entitled to discretionary immunity via any or all of the three identified decisions with respect to each alleged specification of negligence. We first observe that the identified decisions related to two of the city's proffered policies, the Comprehensive Plans and PedPDX, are expressly limited to allowing or removing parking at the intersection. Plaintiff's negligence allegations, however, are not so limited. Rather, each individual negligence allegation challenges city conduct that includes, but is certainly broader than, the city's decisions to allow or remove parking at the intersection. Allegations (a) through (d) challenge the city's conduct with regard to failing to provide required or adequate sight distances and

smaller sight triangles at the intersection and knowingly ignoring sight distance standards; indeed, allegation (d) expressly challenges the city's failure "to adopt other mitigation measures, such as posting lower speed limits in the sight-distance restricted areas," "[i]n the alternative or in combination with providing parking setbacks." And allegations (e) and (f) challenge the city's failure to make travel at the intersection "reasonably safe for the public" and failure "to exercise reasonable care."

As plaintiff correctly points out, the undisputed evidence in the summary judgment record establishes that parking management is only one means by which the city could have addressed sight distance issues at the intersection or exercised reasonable care on which her negligence allegations are premised. Because sight distance depends on various factors, including the allotted speed limit and street design, other means of addressing inadequate sight distances include decreasing the speed limit, installing a traffic signal, eliminating permissive right and left turns, and providing advance warning signage. It follows that, even if the city were to establish that it was entitled to discretionary immunity as to decisions to allow or remove parking at the intersection under those two policies, those decisions would not provide a complete affirmative defense to any one of plaintiff's alleged specifications of negligence. *Cf. Robbins*, 284 Or App at 600 (reversing grant of summary judgment for discretionary immunity as to one negligence specification because "the city simply has not made a case for discretionary immunity with respect to [that] specification of negligence"). The city's decisions to allow or remove parking at the intersection under its Comprehensive Plan and PedPDX policies therefore do not entitle it to immunity for plaintiff's negligence claim.

We turn to the city's third identified decision related to its third proffered policy, *viz.*, the decision to "gain[] knowledge of and address[] defects in its infrastructure, such as road signage and visibility problems at intersections" through employing a complaint-based or report-driven system. In its summary judgment motion, the city argued that it was entitled to discretionary immunity for any negligence

resulting from following that policy. In a supporting declaration, PBOT Engineering Supervisor Carl Snyder averred that the city employs the complaint-based policy because it does not have the resources to proactively inspect and investigate all 4,700 miles of public city streets it maintains.

As to the city's decision to "gain[] knowledge of and address[]defects in its infrastructure" at the intersection under the complaint-based policy, Snyder stated that the city received no complaints regarding the parking sign at the southwest corner of the intersection, nor any requests to remove parking at that corner of the intersection. Snyder further stated that, "[p]rior to the [crash] in this case, the [c]ity did not have notice that visibility at the southwest corner of the [i]ntersection was a problem."

On appeal, the city asserts that its decision to retain parking at the intersection was consistent with its report-driven policy because the complaint system yielded no notice of visibility concerns at that location. However, evidence in the summary judgment record does not conclusively establish that factual premise. The city therefore is not entitled to discretionary immunity for that policy decision.[4] *Cf. Turner*, 359 Or 664 (concluding that defendant Oregon Department of Transportation's "theory of discretionary-function immunity * * * fails" because it did not establish a factual proposition that was "the lynchpin" of that theory as a matter of law).

To begin, although Snyder asserted that, "[p]rior to the [crash] in this case, the [c]ity did not have notice that visibility at the southwest corner of the [i]ntersection was a problem," he nonetheless described a complaint the city received in 2010 "that could be interpreted as regarding visibility at the southwest corner of the [i]ntersection." According to Snyder, a daycare and preschool called Childroots "requested that the [c]ity make SE 17th Avenue into a one-way road to remediate narrow clearance for

---

[4] For that reason, we need not address the parties' legal arguments regarding whether the city may permissibly adopt such a policy for carrying out its common law "nondiscretionary duty" to inspect and maintain its public streets so that they are "reasonably safe for members of the public who use [them] in a manner that is consistent with [their] public purpose." *Hughes v. Wilson*, 345 Or 491, 497-98, 199 P3d 305 (2008).

vehicles turning there and traveling along SE 17th Avenue." Snyder further averred that in response to the complaint the city "investigated and decided to remove parking on the east side of SE 17th Avenue, south of East Burnside, even after considering the adjacent business'[s] objection to parking removal."

Even if a rational factfinder could conclude from Snyder's declaration that the city had no notice or knowledge of visibility concerns at the intersection, given his narrow characterization of the 2010 Childroots complaint, plaintiff produced evidence in opposing the city's summary judgment motion that would at least cast doubt on Snyder's account, if not outright refute it. Plaintiff submitted a copy of an October 2010 email from the director of Childroots, a daycare and preschool located on 17th Avenue at the southeast corner of the intersection, that followed up on the initial complaint and reported "just a few of the complaints/concerns voiced regularly by parents in our community," including specifically that "[t]here is virtually now [*sic*] visibility for cars turning on to 17th from E. Burnside or the other way around." From that evidence, a rational factfinder could find that the city had notice and knowledge of broader visibility concerns at the intersection—indeed, of the precise sight distance issue at the south side of the intersection where Whitfield turned left onto East Burnside in front of Coe in this case. The city therefore failed to establish as a matter of law the lynchpin factual proposition on which its discretionary-function immunity theory relied with regard to the city's decision to "gain[] knowledge of and address defects in its infrastructure" under the complaint-based policy.

Because the city is not entitled to discretionary immunity as a matter of law under any of its proffered policies, the trial court erred in granting summary judgment for defendant on that basis.

Reversed and remanded.